IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, COAL RIVER MOUNTAIN
WATCH, WEST VIRGINIA HIGHLANDS
CONSERVANCY, and THE SIERRA CLUB,

    Plaintiffs,

v.   Civil Action No. 3:08-0979

UNITED STATES ARMY CORPS OF
ENGINEERS; ROBERT L. VAN ANTWERP,
Commander in Chief of Engineers, U.S. Army
Corps of Engineers; DANA R. HURST,
Colonel, District Engineer, U.S. Army Corps of
Engineers, Huntington District,

    Defendants,

and

HOBET MINING COMPANY, LLC,
FOLA COAL COMPANY, LLC,
LOADOUT, LLC, and COAL RIVER
MINING, LLC,

    Intervenor-Defendants.

### INTERVENOR-DEFENDANT FOLA COAL COMPANY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

    Intervenor-Defendant Fola Coal Company, LLC ("Fola") now submits this Memorandum in Support of its Motion for Partial Summary Judgment against Plaintiffs Ohio Valley Environmental Coalition ("OVEC"), Coal River Mountain Watch ("CRMW"), West Virginia Highlands Conservancy ("WVHC") and the Sierra Club (collectively "Plaintiffs") as to Count One of Plaintiffs' Fourth Amended and Supplemental Complaint ("Complaint").  As

demonstrated below, no genuine issue of material fact prevents the entry of summary judgment in favor of Fola on the public notice claims contained in Count One of the Complaint. Fola specifically reserves its arguments with respect to Plaintiffs' remaining claims against Fola, set forth in Counts Two, Three and Four of the Complaint, until a final decision is rendered in *Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009).

## FACTUAL BACKGROUND

This case involves both substantive and procedural challenges to the Corps' issuance of a Section 404 Permit to Fola authorizing the discharge of dredged or fill material into waters of the United States in conjunction with the operation of its Ike Fork No. 1 and Ike Fork No. 2 Surface Mines in Nicholas and Clay counties of West Virginia. On April 13, 2005, after deeming Fola's permit application complete, the Corps issued Public Notice No. 200400967 to announce the proposed project and to solicit comments from interested members of the public. Plaintiffs' Memo in Support of Motion for Preliminary Injunction, Ex. 1 ("Public Notice") at 1. The Public Notice also informed persons who had an interest that might be adversely aggrieved by the project of their right to request a public hearing. *Id.* at 3. Ten written comments were received, including one comment on behalf of Plaintiffs OVEC, CRMW and WVHC. Corps' Memo in Opposition to Motion for Preliminary Injunction ("Corps' Memo"), Ex. 3 (Corps Permit Evaluation and Decision Document ("DD")) at 11. The Corps received no requests for a public hearing on Fola's permit application. DD at 12.

Fola submitted a compensatory mitigation plan ("CMP") in October 2006 and a supplement to the CMP in December 2007. *Id.* at 25. Fola submitted a Revised Environmental Information Document ("EID") in January 2007. After carefully evaluating the proposed project in accordance with NEPA and the CWA's Section 404(b)(1) Guidelines, the Corps issued to Fola

a Section 404 Permit on March 5, 2008. The accompanying DD includes a discussion of all public comments received. DD at 127-30, Appx. J (detailed response to Plaintiffs' comments).

In April 2008, Plaintiffs sought to file a Sixth Supplemental Complaint to add both substantive and procedural claims against Fola to *Ohio Valley Environmental Coalition v. U.S. Army Corps of Engineers*, Civ. Action No. 3:05-0784, 479 F. Supp. 2d 607 (S.D. W. Va. 2007).[1] In its April 23, 2008 Order issued in that case, this Court authorized Fola to continue mining in Valley Fill 4 of the Ike Fork No. 2 Surface Mine pursuant to the mutual agreement of the parties. [Docket 397].

On September 18, 2008, Plaintiffs filed their Second Amended Complaint to the present action to add their challenges to Fola's Section 404 Permit, including challenges to the sufficiency of the Public Notice issued by the Corps. [Docket 35-2]. A preliminary injunction hearing was held on October 22 through 24, 2008. On October 31, 2008, this Court issued a Memorandum Opinion and Order [Docket 77], which granted Plaintiffs' motion for a preliminary injunction, but simultaneously stayed that injunction with respect to Valley Fills 2 and 3 on the Ike Fork 1 permit. Such a stay was proposed by Plaintiffs' counsel during closing arguments at the preliminary injunction hearing. The precise scope of this partial stay was determined during a telephonic hearing held on November 7, 2008. Thus, Fola has been mining under its Section 404 Permit in accordance with this Court's Orders for nearly one year.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper on all or part of a claim if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must satisfy its burden by

---

[1] This Court granted Plaintiffs Motion on March 4, 2009. [Docket 419].

3

demonstrating that the record contains no evidence to support an essential element of a nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-24 (1986). The evidence must be considered in the light most favorable to the non-moving party. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 159 (1970) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986) (citations omitted).

## ARGUMENT

Plaintiffs contend that the Corps violated its obligations under the CWA and NEPA by failing to provide the public with meaningful notice and opportunity for comment in connection with its issuance of Fola's Section 404 Permit. Plaintiffs' arguments rest solely upon the fact that the Corps did not circulate Fola's CMP or EID when it issued its public notice on April 13, 2005. As will be made clear below, however, nowhere do the CWA or NEPA regulations require the Corps to include either the CMP or the EID with a public notice.

**A.     Standard of review under the Administrative Procedure Act**

As the Fourth Circuit explained in *Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, "[c]laims challenging federal agency action under the CWA and NEPA are subject to judicial review under the APA." 556 F.3d 177, 192 (4th Cir. 2009) (citing *Holy Cross Wilderness Fund v. Madigan*, 960 F.2d 1515, 1521 (10th Cir. 1992)); *see* 5 U.S.C. § 702. As a general rule, the APA provides that an "agency action, findings, and conclusions" must be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5. U.S.C. § 706(2). As numerous courts have emphasized, review under this standard is highly deferential and "presumes the validity of the agency's action." *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 16 F.3d 1395, 1400 (4th Cir. 1993). While the necessary "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

**B.     The Corps fully discharged its obligations under the public notice and participation requirements of NEPA and the CWA.**

**1.     The Corps complied fully with the public notice requirements of the CWA.**

Section 404 of the CWA provides that the Corps may issue permits for the discharge of dredged or fill material into the navigable waters of the United States only "after notice and opportunity for comment." 33 U.S.C. § 1344(a). Further, the CWA requires the Corps to issue a public notice within 15 days of receipt of a complete application. *Id.* Under the Corps' regulations implementing this mandate, a "complete application" exists "when sufficient information is received to issue a public notice." 33 C.F.R. § 325.1(d)(10), *as amended by* 73 Fed. Reg. 19594 (April 10, 2008). Significantly, "[t]he issuance of a public notice will not be delayed to obtain information necessary to evaluate an application," and "[t]he comment period should not be more than 30 days . . . from the date of the notice." *Id.* §§ 325.2(d)(10) and 325.2(d)(2).

With regard to content, the public notice must include "sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment." 33 C.F.R. § 325.3(a). Specifically, the public notice must include, if applicable, 17 items of information [*see id.* § 325.3(a)(1)-(17)], including, *inter alia*, "[a] brief description of the proposed activity, its purpose and intended use, so as to provide sufficient information

5

concerning the nature of the activity to generate meaningful comments." *Id.* § 325.3(a)(5). As this plain language indicates, the regulations "only require general descriptions of the proposed use . . . [rather than] inordinate specificity." *Environmental Coalition of Broward County v. Myers*, 831 F.2d 984, 986 (11th Cir. 1987). Like all agency findings, the Corps' determination that a permit application is complete "is due great deference." *Id.*[2]

Nowhere do the Corps' regulations require that detailed environmental documents like Fola's EID and CMP be submitted with a permit application or disseminated concurrently with the public notice. Notably, the Corps' regulations were amended in April 2008 to require permit applications under Section 404 of the CWA to include "a *statement* describing how impacts to waters of the United States are to be avoided and minimized." *Id.* § 325.1(d)(7) (emphasis supplied).[3] This final rule requiring the submission of a mitigation statement with the permit application became effective on June 9, 2008, and applies only "to permit applications received after the effective date of this rule." 73 Fed. Reg. at 19608. Because Fola's permit application was submitted in early 2005, neither the complete application nor the public notice was required to include mitigation information. Indeed, the very fact that the Corps amended its regulations to

---

[2] Plaintiffs have argued in this litigation that the Corps was required to circulate the CMP and EID under 33 C.F.R. § 325.3(a)(13), which provides for the inclusion of "[a]ny other *available* information which may assist interested parties in evaluating the likely impact of the proposed activity, if any, on factors affecting the public interest." (emphasis supplied). However, as Plaintiffs point out, neither of these documents was "available" at the time that the Corps was required to issue the public notice under the statute and its implementing regulations. 33 U.S.C. § 1344(a); 33 C.F.R. § 325.1(d)(1). Moreover, as noted above, the regulations direct that "[t]he issuance of a public notice will not be delayed to obtain information necessary to evaluate an application." 33 C.F.R. § 325.2(d)(2).

[3] The plain language of the new rule requires only a statement regarding mitigation, and not a full CMP. As the Preamble to the new rule makes clear, "this should be a *brief statement* because this occurs in the early stages of the evaluation process, and the evaluation of mitigation options is an iterative process. As district engineers conduct their evaluations in accordance with applicable Corps regulations, the 404(b)(1) Guidelines, and regulations governing other applicable laws . . . additional minimization may be required, and compensatory mitigation requirements will be determined in greater detail to offset the permitted impacts to the extent appropriate and practicable." 73 Fed. Reg. at 19641.
  Moreover, the Corps' regulations still do not require the inclusion of an EID in either the permit application or the public notice. *See* 33 C.F.R. §§ 325.1 and 325.3.

6

require the submission of a mitigation statement with all future Section 404 permit applications suggests that the same requirement did *not* exist under the regulations as they stood previously.

The Corps complied fully with its regulations in connection with Fola's Section 404 Permit. Upon its receipt of all of the information required by 33 C.F.R. § 325.3(a), the Corps deemed Fola's application to be complete and issued Public Notice No. 200400967 on April 13, 2005. *See* Public Notice at 1. The public notice included all of the information required by 33 C.F.R. § 325.3(a). The public notice contained a clear and detailed description of the proposed work to be undertaken in conjunction with the Ike Fork No. 1 and No. 2 Surface Mines, including the nature of the mining operation, the purpose of the project, and the magnitude of the proposed impacts on waters of the United States. *Id.* at 2-3. The public notice also stated that further "[d]etails regarding the applicant's mine plan can be found in . . . the applicant's Surface Mining Application on file at the WVDEP." *Id.* at 3. Finally, the notice solicited public comments "to better enable us to make a reasonable decision on factors affecting the public interest," and notified persons having an interest that may be adversely affected by the issuance of the Permit of their right to request a public hearing. *Id.* at 1, 3. The public comment period closed on May 14, 2005—30 days after the date of notice. *Id.* at 1.

The administrative record belies Plaintiffs' claims that they lacked an opportunity to submit meaningful comments on Fola's permit application. Indeed, in response to the public notice, Plaintiffs OVEC, CRMW and WVHC submitted extensive comments on the proposed permit, including the expert declaration of Dr. J. Bruce Wallace. Corps' Memo, Ex. 3 (Plaintiffs' Comments) and Ex. 4 (Wallace Declaration). These comments address at considerable length, *inter alia*, the adequacy of mitigation for both the individual and cumulative impacts of the proposed project on the affected headwater streams. Plaintiffs' Comments at 4-

15, 21-23; Wallace Declaration at 1-14.  Plaintiffs did not exercise their right to request a public hearing.  DD at 12.  When the Corps issued Fola's final Section 404 Permit, the accompanying DD specifically addressed all public comments received on the project during the comment period, including those of Plaintiffs and Dr. Wallace.  DD at 127-30, Appx. J.  Plaintiffs' claim that the absence of the CMP and EID from the public notice deprived them of any opportunity for meaningful comment on Fola's Section 404 Permit is therefore utterly without merit.  As demonstrated above, the Corps provided interested members of the public with sufficient information concerning the "nature and magnitude" of the Ike Fork project to satisfy the public notice and participation requirements of the CWA.  33 C.F.R. § 325.3(a).

Indeed, this case is remarkably similar to *Northwest Environmental Defense Center v. Wood*, in which the court found that the Corps had not violated the CWA's public comment procedures despite the plaintiffs' allegations that they had been deprived of an opportunity to participate meaningfully in the process.  947 F. Supp. 1371, 1381 (D. Or. 1996), *aff'd* 97 F.3d 1460 (9th Cir. 1996) (unpublished decision).  In *Wood*, as in this case, the Corps considered additional information that was submitted after the close of the comment period, including the applicant's alternatives analysis and its proposed mitigation plan.  *Id.*  In rejecting the plaintiffs' challenges, the court held that the Corps had afforded the public "ample opportunity" for meaningful comment by providing an initial comment period and addressing the public's concerns explicitly in the decision document.  *Id.*  As demonstrated above, this case is analogous to *Wood*, as Plaintiffs had an opportunity to submit comments on their concerns about the successful mitigation of potential adverse impacts and the Corps' DD addressed this topic and

8

Plaintiffs' comments in great detail. This is precisely the exchange of ideas that the CWA's public participation requirements contemplate.[4]

Finally, the Corps was not required to submit a supplementary public notice after its receipt of Fola's CMP and EID. Under the Corps' regulations, "[t]he district engineer will issue a supplemental, revised, or corrected public notice if *in his view* there is a change in the application data that would affect the public's review of the proposal." 33 C.F.R. § 325.2(a)(2) (emphasis supplied). In other words, the issuance of a supplemental public notice is not mandatory whenever the Corps receives new information relating to a pending permit application, but rather falls within the Corps' discretion. *See, e.g., Sierra Club v. United States Army Corps of Engineers*, 450 F. Supp. 2d 503, 535-36 (D.N.J. 2006), *vacated and remanded on other grounds*, 277 Fed. Appx. 170 (3d Cir. 2008) (upholding the Corps' decision not to issue a supplemental public notice because the initial public notice sufficiently apprised the public of the issues raised in the supplemental materials, as evidenced by the comments submitted on the initial notice); *B&B Partnership v. United States*, 133 F.3d 913, *6-*7 (4th Cir. 1997) (unpublished opinion) (rejecting challenge to the Corps' decision not to issue a supplemental public notice after receiving "plan modifications" and noting that "[t]his regulation plainly does not require the Corps to issue such a notice and accept additional comments whenever an applicant submits supplemental material").[5]

---

[4] Moreover, Fola's CMP and EID did not constitute the source of a "sudden shift in rationale" that served as the basis of the Corps' approval of Fola's Section 404 Permit, thereby requiring public disclosure under the rationale of *National Wildlife Federation v. Marsh*, 568 F. Supp. 985 (D.D.C. 1983). The CMP and EID did not alter the scope, rationale or goal of the Ike Fork project as stated in the Public Notice.

[5] Indeed, if, as Plaintiffs appear to suggest, the CMP *per se* necessitates a supplemental public notice, this position would effectively require the Corps to issue a supplemental public notice for *every* Section 404 permit, since the finalization of the CMP occurs late in the permitting process (while, as noted above, the initial comment period is required by law to be held within 15 days of receipt of a complete application). This approach would remove the Corps' discretion entirely.

The case at bar is directly analogous to *Sierra Club*. In that case, the court rejected a challenge to the Corps' decision not to issue a supplemental notice, reasoning that "[g]iven that the public was well apprised by the initial notice of [the] issues to which the challenged supplemental materials pertain, *as evidenced by comments to the initial notice received by the Army Corps*, the Army Corps's decision not to reopen the comment period was reasonable and does not reflect an abuse of discretion." *Sierra Club*, 450 F. Supp. 2d at 535-36 (footnote omitted) (emphasis supplied). Similarly, as discussed above, Plaintiffs in this action submitted extensive comments during the comment period concerning mitigation of the environmental impacts of the proposed Ike Fork operation. Plaintiffs' Comments at 9-15, 21-23; Wallace Declaration. These comments were addressed at length by the Corps in the DD. DD at 129-30, Appx. J. Given the highly deferential standard under which courts must review an agency determination of this nature, this Court must conclude that the Corps' decision not to issue a supplemental public notice was reasonable in light of Plaintiffs' already-submitted comments, and thus did not contravene the CWA or the APA. *See NRDC v. USEPA*, 16 F.3d at 1400.

### 2.     The Corps fully complied with NEPA's public participation requirements.

Plaintiffs raise a similar challenge to the sufficiency of the Corps' public notice under NEPA, and this argument is equally without merit. NEPA's regulations require "[t]he agency [to] involve the environmental agencies, applicants, and the public, *to the extent practicable*, in preparing [an EA]." 40 C.F.R. § 1501.4(b) (emphasis supplied). The regulations also require agencies, *inter alia*, to "make diligent efforts" to involve the public in the NEPA process, to provide public notice of NEPA-related hearings and documents, and to "solicit appropriate information from the public." *Id.* § 1506.6. While Fola does not disagree that public review and

---

Moreover, under the newly amended regulations requiring the submission of a mitigation "statement" with the permit application, supplemental public notice is not required when the final CMP is submitted. 33 C.F.R. § 325.1(d)(7).

participation is an integral part of the NEPA review process, *see California v. Block*, 690 F.2d 753, 770 (9th Cir. 2003), Fola does dispute Plaintiffs' contention that they were denied the opportunity for meaningful participation simply because the Corps did not circulate Fola's CMP and EID with its public notice.

Much like the CWA's implementing regulations, nowhere do NEPA's regulations governing public participation require the disclosure of the EID or CMP to the public.[6] Indeed, reviewing courts consistently have rejected the argument that NEPA mandates the disclosure of specific documents that amount to "less than" a full EIS. *See, e.g., Bering Strait Citizens for Responsible Resource Development v. U.S. Army Corps of Engineers*, 524 F.3d 938, 952 (9th Cir. 2008) (holding that NEPA does not require the Corps to circulate draft EAs for public review and comment); *Alliance to Protect Nantucket Sound, Inc. v. U.S. Department of the Army*, 398 F.3d 105, 114-15 (1st Cir. 2005) (same); *Greater Yellowstone Coalition v. Flowers*, 359 F.3d 1256, 1279 (10th Cir. 2004) (holding that NEPA does not require the Corps to circulate an EA for public review and comment); *Pogliani v. U.S. Army Corps of Engineers*, 306 F.3d 1235, 1238 (2d Cir. 2002) (*per curiam*) (holding that the Corps must circulate an EA for public review and comment only in certain limited circumstances); *Fund for Animals, Inc. v. Rice*, 85 F.3d 525, 549 (11th Cir. 1996) (stating that NEPA imposes no legal requirement to circulate an EA).

In the present case, the public notice issued by the Corps contained sufficiently detailed information to inform Plaintiffs of Fola's permit application and the nature and scope of the proposed project. Indeed, Plaintiffs were able to and did provide extensive comments on Fola's Section 404 Permit application, devoting a considerable number of pages to the issue of mitigation of environmental impacts, both individual and cumulative. Plaintiffs' Comments at 4-

---

[6] Fola notes that both the CMP and EID were available for public review following their submission to the Corps, and, to Fola's knowledge, Plaintiffs made no attempt to procure and review these documents.

15, 21-23; Wallace Declaration at 1-14. The Corps duly received, considered, and responded to each of Plaintiffs' comments on the application. DD at 129-30, Appx. J (detailed response to Plaintiffs' comments). Despite Plaintiffs' attempts to graft additional substantive requirements onto the regulatory framework, NEPA requires no more.

### 3. The Corps adequately addressed Plaintiffs' comments regarding selenium.

Finally, Plaintiffs allege that the Corps did not adequately respond to Plaintiffs' comments regarding "potential selenium discharges" from the Ike Fork No. 1 and Ike Fork No. 2 Surface Mines. Complaint at 20.

As an initial matter, the Corps is not required by its regulations to respond to each claim made in comments submitted on a proposed project. 33 C.F.R. § 325.2(a)(3). The Corps must consider the comments in any subsequent permit decision, acknowledge the comments as appropriate, and make all comments part of the administrative record of the permit application. *Id.* The Corps satisfied each of these three obligations with respect to Plaintiffs' comments on the Ike Fork permit application. The administrative record contains Plaintiffs' comments[7] and the Corps went beyond merely acknowledging these comments: it responded to each comment directly. *See* DD at 129-30, Appx. J (extended discussion of Plaintiffs' comments). It is also clear from the administrative record that the Corps considered Plaintiffs' comments regarding selenium. The DD discusses selenium, including the potential for the affected strata to have elevated levels of selenium and certain measures that Fola will undertake to minimize or eliminate selenium discharges. DD at 4, 24 74, 111, 112. The fact the Corps did not adopt the position advanced by Plaintiffs does not mean the Corps failed to discharge its obligation to consider their comments.

---

[7] *See* Index to Administrative Record at 3 (October 20, 2008) [Docket 65-2].

More fundamentally, however, the Corps explained in its response to Plaintiffs' comments that "WQS are protected by the applicant['s] WVDEP-approved Section 401 WQC and NPDES permit." DD Appx. J at 21; *see also* DD at 24, Appx. J at 20-21 (discussing WVSCMRA Material Handling Plan for the Ike Fork surface mines). In other words, WVDEP—not the Corps—is the entity responsible for regulating discharges from these mines, including discharges of selenium.[8] As such, the claim that the Corps did not fully consider the cumulative impact of selenium in issuing Fola's Section 404 permit is irrelevant because this claim is beyond the scope of the Corps' jurisdiction under the CWA. As reiterated in the recent *Aracoma* decision, the Corps' jurisdiction is limited to the discharge of dredged or fill material into the navigable waters of the United States. *See* 33 U.S.C. § 1344; *Aracoma*, 556 F.3d at 194 (noting that "[t]he specific activity that the Corps is permitting when it issues a § 404 permit is nothing more than the filling of jurisdictional waters for the purpose of creating an underdrain system for the larger valley fill"). All other water quality issues are regulated by WVDEP, as the state agency charged with implementing the CWA and SMCRA in West Virginia. *Aracoma*, 556 F.3d at 194. Because the Corps is entitled to rely on the expertise of the state agency charged by EPA with regulating water quality with respect to selenium, Plaintiffs' challenge must fail.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment to Fola as to Count One of Plaintiffs' Fourth Amended and Supplemental Complaint.

---

[8] In fact, WVDEP reissued the WV/NPDES permit for the Ike Fork mines on July 31, 2007, and Plaintiffs did not appeal this permit reissuance.

**FOLA COAL COMPANY, LLC**

By SPILMAN THOMAS & BATTLE, PLLC

    /s/ James S. Crockett, Jr.
James S. Crockett, Jr. (WV State Bar # 9229)
Allyn G. Turner (WV State Bar # 5561)
Andrew B. McCallister (WV State Bar # 10026)
Spilman Thomas & Battle, PLLC
Post Office Box 273
Charleston, West Virginia 25321-0273
Telephone: (304) 340-3800
Facsimile: (304) 340-3801
jcrockett@spilmanlaw.com
aturner@spilmanlaw.com
amccallister@spilmanlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**OHIO VALLEY ENVIRONMENTAL
COALITION, COAL RIVER MOUNTAIN
WATCH, WEST VIRGINIA HIGHLANDS
CONSERVANCY, and THE SIERRA CLUB,**

   **Plaintiffs,**

v.                    Civil Action No. 3:08-0979

**UNITED STATES ARMY CORPS OF
ENGINEERS; ROBERT L. VAN ANTWERP,
Commander in Chief of Engineers, U.S. Army
Corps of Engineers; DANA R. HURST,
Colonel, District Engineer, U.S. Army Corps of
Engineers, Huntington District,**

   **Defendants**

**and**

**HOBET MINING COMPANY, LLC,
FOLA COAL COMPANY, LLC,
LOADOUT, LLC, and COAL RIVER
MINING, LLC,**

   **Intervenor-Defendants.**

### CERTIFICATE OF SERVICE

  I, James S. Crockett, Jr., counsel for Fola Coal Company, LLC, hereby certify that on April 6, 2009, I electronically filed the foregoing **Intervenor-Defendant Fola Coal Company, LLC's Memorandum of Law in Support of its Motion for Partial Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Joseph M. Lovett, Esq.
Derek O. Teaney, Esq.
Appalachian Center for the Economy and the Environment
*Counsel for Plaintiffs*

James M. Hecker
Public Justice
1825 K Street, N.W. Suite 200
Washington, D.C. 20006
*Counsel for Plaintiffs*

Cynthia J. Morris, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
*Counsel for Defendants*

Robert G. McLusky, Esq.
Blair M. Gardner, Esq.
James R. Snyder, Esq.
Christopher M. Hunter, Esq.
Jackson Kelly PLLC
1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322
*Counsel for Intervenor Hobet Mining Company, LLC*

Terry R. Sammons, Esq.
Sammons Law Offices, PLLC
P.O. Box 1747
Gilbert, WV 25621
*Counsel for Intervenors Loadout, LLC and Coal River Mining, LLC*

W. Howard Sammons, II, Esq.
Law Office of W. Howard Sammons, II, PLLC
2768 Pennsylvania Avenue
Charleston, WV 25302
*Counsel for Intervenors Loadout, LLC and Coal River Mining, LLC*

Edward P. Tiffey, Esq.
Edward P. Tiffey, PLLC
P.O. Box 3785
Charleston, WV 25337
*Counsel for Intervenors Loadout, LLC and Coal River Mining, LLC*

Nicholas S. Preservati, Esq.
Preservati Law Offices, PLLC
P.O. Box 1431
Charleston, WV 25325
*Counsel for Intervenors Loadout, LLC and Coal River Mining, LLC*

    /s/ James S. Crockett, Jr.
James S. Crockett, Jr. (WV State Bar No. 9229)