IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| OHIO VALLEY ENVIRONMENTAL COALITION, et al., <br> Plaintiffs, <br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 3:08-0979 <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FOLA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT ONE OF THEIR FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT**

**Introduction**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs file this memorandum in opposition to Fola Coal Company, LLC's (Fola's) motion for summary judgment and in support of Plaintiffs' cross-motion for summary judgment and a permanent injunction on Count One of their Fourth Amended and Supplemental Complaint. Plaintiffs contend that the Defendant U.S. Army Corps of Engineers (the Corps) violated its obligations under the Clean Water Act (CWA) and the National Environmental Policy Act (NEPA) to provide adequate public notice and comment and to involve the public in its environmental impact analysis when the Corps issued an individual permit under § 404 of the Clean Water Act (CWA) to Fola Coal Company, LLC (Fola) for its Ike Fork No. 1 and No. 2 Surface Mines.

**Facts**

On April 13, 2005, the Corps issued a public notice of its proposed issuance of an individual § 404 permit to Fola to place fill material in 32,731 linear feet of streams in the

Sycamore Run, Ike Fork, and Lily Fork watersheds of Buffalo Creek near Gilboa in Nicholas and Clay Counties in West Virginia in conjunction with the construction of eleven valley fills for the Ike Fork No. 1 and Ike Fork No. 2 Surface Mines. Buffalo Creek is a tributary of the Elk River. Public Notice, Pl. PI Ex. 1 (maps omitted), AR Vol. 1, Tab 8.[1] The notice stated that the applicant had not submitted a Compensatory Mitigation Plan (CMP) to compensate for impacts of the stream-filling activities. Id., p. 3. The notice also did not contain any conceptual description or statement about Fola's mitigation plan. Based on this extremely limited information, Plaintiffs submitted comments opposing the issuance of this permit prior to the May 14, 2005 close of the 30-day public comment period. OVEC Comments, AR Vol. 2, Tab 14; Corps Permit Evaluation and Decision Document (DD), p. 129, Pl. PI Ex. 2A-2E, AR Vol. 6, Tab 35.

On November 2, 2004, four months before this public notice, the Corps informed Fola that in order to process its request for an individual § 404 permit, Fola would have to submit a CMP and an Environmental Information Document (EID) to the Corps. Pl. PI Hearing Ex. 16; Corps PI Hearing Ex. 1, AR, Vol. 2, Tab 6. The letter stated that the information in these two documents "provides the factual basis for the Corps to make the aforementioned conclusions [that the project is consistent with the Section 404(b)(1) Guidelines and is not contrary to the public interest] to facilitate final IP decisions" and "is required in order to process an IP request." Id., p. 2. Thus, the CMP and EID were essential to process Fola's permit.

Fola submitted its initial Compensatory Mitigation Plan (CMP) to the Corps in October 2006 and a supplemental CMP in December 2007, more than two years after the close of the

---

[1] Except for Pl. Ex. 16, which was submitted at the October 22-24, 2008 hearing, all exhibits referenced in this brief were previously submitted in support of Plaintiffs' motion for a preliminary injunction.

comment period. DD, p. 27; AR Vol. 3; AR Vol. 4, Tab 23; AR Vol. 6, Tab 30. The initial CMP contains 65 pages, not counting its seven appendices, and the supplemental CMP and its three appendices contain an additional 146 pages. AR Vol. 3; AR Vol. 4, Tab 23. Fola submitted its revised EID to the Corps in January 2007. AR Vol. 5, Tab 26. The EID contains 276 pages, and its appendices contain hundreds of additional pages. Id. Thus, the CMP, supplemental CMP, and EID total over 487 pages.

The Corps provided copies of Fola's EID and CMP on January 25, 2007, and November 3, 2006, respectively, to the U.S. Fish and Wildlife Service, U.S. EPA, WVDEP, WV Division of Natural Resources, WV Division of Culture and History, and the federal Office of Surface Mining for review and comment. DD, p. 11. The Corps stated that "[t]he mitigation proposal has been thoroughly reviewed by this office and the state resource agencies and it has been determined that successful implementation of the plan would adequate compensate for unavoidable impacts to aquatic resources." DD, Appendix J, p. 8, Pl. PI Ex. 3. The Corps did not make either the EID or the CMP available to the public for review and comment before it issued Fola's permit.

On March 5, 2008, nearly three years after the public notice, the Corps issued an individual § 404 permit to Fola for the two Ike Fork Mines, authorizing Fola to place fill material in 33,143 linear feet of streams in the Sycamore Run, Ike Fork, and Lily Fork watersheds in conjunction with the construction of ten valley fills. Permit, Pl. PI Ex. 4, AR Vol. 6, Tab 36. Seven of the 18 Special Conditions in this permit are based on the CMP. Id., Nos. 12-18. Special Condition 12 incorporates the entire CMP by reference.

The permit was accompanied by a 144-page Decision Document with eleven appendices

totaling an additional 201 pages. Pl. PI Ex. 2, AR Vol. 6, Tab 35. The DD contains twenty pages describing Fola's mitigation plan, and forty pages describing environmental impacts. Id., pp. 18-38, 38-78. None of this material was contained in the Public Notice. The Corps made no other efforts to involve the public in its analysis of these issues before its decision was issued. In its response to public comments, the Corps criticized Plaintiffs' comments as being "very general in form" and containing "little specific content" about Fola's project. DD, p. 129.

According to the Corps' DD, "[t]he proposed valley fill construction would permanently eliminate approximately 261 acres of in-stream, riparian and upland forest habitat within the designated footprints of Valley Fills 1, 2 and 3 at Ike Fork No. 1 Surface Mine and Valley Fills 1-7 at Ike Fork No. 2 Surface Mine." DD, p. 81. The valley fills would bury 28,258 feet of streams. DD, p. 2. "[M]ost biological activity would be essentially eliminated within the footprints of the proposed valley fills and mine through areas." DD, p. 118. "The discharge of pollutants, which is dredged or fill material, and the associated impacts of the overall project, would result in losses of wildlife habitat, as well as eliminate many functions presently performed by the headwater stream systems of the Buffalo Creek watershed." Id. at 133.

The Corps used its interim Functional Assessment Approach for High Gradient Streams (FAAHGS) and its "best professional judgment" to measure the structure and function of impacted and mitigated streams. DD, pp. 25-26, 113; id., App. J, pp. 4, 8, 10, 12. To attempt to mitigate the stream loss from valley filling, the Corps approved Fola's CMP that would require it to create 36,416.5 linear feet of stream channels on previously mined areas in the Laurel Fork watershed. DD, p. 25; id., App. J, p. 10. The Corps stated that "[s]tream mitigation is relatively new and evolving science and has the risk of failure that is inherent in efforts with limited

experience or history." DD, p. 36.

The Corps found that past, present, and future actions in the cumulative impact area related to the Fola mine have impacted or will impact 66.8% of the streams in the Lily Fork watershed and 20.8% of the streams in the Buffalo Creek watershed. DD at 84, 109; id., App. H pp. 13-14, Pl. PI Ex. 5.

The Fola Ike Fork No. 1 and No. 2 Surface Mines will mine and disturb coal and overburden with elevated levels of selenium, which will cause selenium discharges into nearby streams. The Corps erroneously assumed that Fola's Material Handling Plan addresses selenium. DD, App. J, pp. 20-21. In fact, it does not and only addresses "potentially acid producing materials." DD, p. 109; Pl. PI Ex. 6. Recent WVDEP stream sampling downstream from adjacent mines in the same and nearby watersheds shows that selenium levels in streams in those watersheds exceed state water quality standards. Pl. PI Ex. 7.

The Corps concluded that the impacts of the Fola project would be insignificant and therefore no environmental impact statement was required. The Corps' determination of insignificance rested on its repeated statements that "the proposed compensatory mitigation is adequate to off-set impacts to aquatic resources proposed for impact," the "compensatory mitigation, as proposed, is sufficient to offset unavoidable impacts to aquatic resources," and "[t]he losses would be appropriately compensated for via the applicant's revised compensatory mitigation plan and post-mining revegetation plan." DD, pp. 79, 84, 86, 133.

On October 31, 2008, the Court granted Plaintiffs' motion for a preliminary injunction, based in part on its finding that Plaintiffs had raised a substantial question whether the Corps had complied with notice procedures under the CWA and NEPA. Document #77, pp. 7-8. The

Court stated that:

> The Corps relied on mitigation measures in the issuance of a FONSI for the Ike Fork permits. These measures were not mentioned, much less explained, in the public notice. Rather, they were described, in detail, in a Compensatory Mitigation Plan, Supplemental Compensatory Mitigation Plan, and Environmental Decision Document submitted after the close of the public comment period.

Id. at 8. The Court concluded that "Whether the public was involved to the extent required by law is fair grounds for litigation and deserves more deliberate inquiry." Id.

## Argument

**I.    The Corps Violated the CWA and Its CWA Regulations on Public Notice**

The Corps violated the CWA by issuing a public notice on Fola's permit application without first obtaining and reviewing Fola's EID and CMP because that application was not complete, and the public could not meaningfully comment on it. Under the Corps' regulations, an application is complete "when sufficient information is received to issue a public notice." 33 C.F.R. § 325.1(d)(10), as amended by 73 Fed. Reg. 19670 (April 10, 2008). That definition of completeness specifically cross-references the Corps' public notice regulation, which provides that a public notice must contain "sufficient information to give a <u>clear understanding</u> of the <u>nature and magnitude</u> of the activity to generate meaningful comment." 33 C.F.R. § 325.3(a) (emphasis added). Required information includes "available information which may assist interested parties in evaluating the <u>likely impact of the proposed activity</u>, if any, on factors affecting the public interest." Id. § 325.3(a)(13) (emphasis added). Thus, a permit application is not complete unless and until it contains sufficient information on the nature, magnitude, and impacts of the proposed activity. If that information is not yet available, the application is not complete and the public notice cannot be issued.

Fola argues that because the Corps' regulations do not specifically require submission of the EID or CMP, or even a brief mitigation statement, prior to the issuance of the public notice, no such obligation exists. Fola SJ Mem. 6. Fola also argues that the fact that the Corps later amended its regulations to require permit applications and public notices to require a description of proposed mitigation shows that such a description was not required under the rules in force when Fola's application was submitted. Id.; see 33 C.F.R. §§ 325.1(d)(7), 332.4(b).

However, the regulatory language requires a common sense evaluation of what information is necessary to clearly understand a project's impacts. By that standard, Fola's application was not complete without its EID and CMP, and the public notice could not be issued without them. The EID and CMP were necessary for a clear understanding of the nature, magnitude, and likely impacts of Fola's proposed Ike Fork No. 1 and No. 2 Surface Mines. The table of contents for the EID shows that it contains over 60 pages analyzing alternatives, actions to minimize environmental effects, and factual determinations under the 404(b)(1) guidelines. AR, Vol. 5, Tab 26. It also contains nearly 200 pages analyzing the affected environment and environmental impacts. Id. Similarly, Fola's CMP tries to measure stream losses and describes a plan for mitigating and offsetting those losses. Pl. PI Ex. 13, 14. The CMP was central to the Corps' decision to grant the Fola permit. The Corps' decision document devotes nearly forty pages to discussing the CMP in great detail. DD, pp. 38-78.

The "clear understanding" requirement in the Corps' public notice regulation embodies the fundamental principle of administrative law that, "in order to have a 'meaningful' opportunity to comment, one must be aware of the information the agency finally decides to rely on in taking agency action." National Asphalt Pavement Ass'n v. Train, 539 F.2d 775, 779 n. 2

(D.C. Cir. 1976). Under this regulation, the Corps must "present for public scrutiny the rationale and pivotal data underlying its proposed action before the close of the comment and hearing period." National Wildlife Federation v. Marsh, 568 F. Supp. 985, 994-96 (D.D.C. 1983). "[W]ithout pivotal data and information, public comment cannot be meaningful." Friends of the Earth v. Hall, 693 F. Supp. 904, 948 (W.D. Wash. 1988).

The courts in the Marsh and Hall cases each found that activities under § 404 permits were illegal because the Corps violated these public participation requirements. In Marsh, the court enjoined activities under a § 404 permit because the Corps relied on an important report that was prepared after the close of the public comment period. 568 F. Supp. at 994-96. In Hall, the court enjoined the Navy from proceeding with a project with a § 404 permit because the Corps failed to disclose a monitoring plan that "was the centerpiece of the Corps' mitigation plan." 693 F. Supp. at 938. Similarly, in this case, Fola's EID and CMP contain pivotal data and information that must be submitted for public comment before the Corps can make its decision to grant a permit.

Fola relies heavily on Northwest Environmental Defense Center v. Wood, 947 F. Supp. 1371, 1381 (D. Or. 1996). Fola SJ Mem. at 8-9. In that case, the court approved the Corps' failure to allow supplemental comment on the applicant's alternatives analysis and mitigation plan. In doing so, the court provided no analysis of the importance of that information or the completeness of the applicant's application, and merely noted that the plaintiffs had had an opportunity for comment on similar issues earlier in the process. Id. at 1381.

The Wood decision is not inconsistent with the two decisions cited by Plaintiffs which require the Corps to "present for public scrutiny the rationale and pivotal data underlying its

8

proposed action before the close of the comment and hearing period." Marsh, 568 F. Supp. at 994-96; Hall, 693 F. Supp. at 948.  In Wood, the court found that the Corps had received public comment on the data (even though it had not been officially submitted for public notice) and addressed those comments, 947 F. Supp. at 1381, which was not true in Marsh or Hall and is not the case here.  Even if Wood were inconsistent with Marsh or Hall, these two decisions are more persuasive and, to the extent that Wood is inconsistent with them, it was wrongly decided, particularly in view of the significant precedent that has interpreted similar provisions requiring meaningful notice consistently with Marsh and Hall.  See, e.g., Am. Radio Relay League v. FCC, 524 F.3d 227, 236-40 (D.C. Cir. 2008); Riverkeeper, Inc. v. EPA, 475 F.3d 83, 111-13 (2d Cir. 2007); Indep. U.S. Tanker Owners Comm. v. Lewis, 690 F.2d 908, 924-26 (D.C. Cir. 1982); U.S. Lines v. FMC, 584 F.2d 519, 534-35 & n.44 (D.C. Cir. 1978).

Alternatively, even assuming arguendo that Fola was not required to submit its EID and CMP prior to the issuance of the initial public notice, those documents were sufficient to trigger the need for a supplemental notice when they were later submitted.  When the Corps receives new information that "is a change in the application data that would affect the public's review of the proposal," it must issue "a supplemental, revised or corrected public notice." 33 C.F.R. § 325.2(a)(2).  Here, the EID and CMP together devote over 487 pages to environmental impact analysis and mitigation, while documents available at the time of the public notice contained nothing whatsoever on these topics.  A shift from no impact analysis and no mitigation plan to a lengthy EID and CMP discussing those topics is a sufficient change affecting the public's review to require a supplemental notice.

While Fola cites two cases that have upheld Corps decisions not to issue a supplemental

9

public notice, neither of those cases involved a data gap as large as the one represented by the EID and CMP in this case.  Fola SJ Mem. at 9; <u>B&B P'ship v. U.S.</u>, 133 F.3d 913, 1997 WL 787145, at *6-*7 (4th Cir. 1997) (unpublished) (alleged failure to submit the applicant's plan modification for supplemental comment); <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 450 F. Supp.2d 503, 535-36 (D.N.J. 2006) (alleged failure to allow supplemental comment on data submitted with the applicant's response to public comments).  In contrast, the 487-plus pages comprising Fola's EID and CMP contain <u>all</u> of Fola's environmental analysis and the central basis for the Corps' decision.

Finally, Fola argues that Plaintiffs had sufficient information to prepare meaningful comments because those comments were "extensive" and of "considerable length."  Fola SJ Mem. at 7-8, 10.  In fact, however, Plaintiffs' comments were extensive and lengthy despite the lack of sufficient information, not because the information was sufficient.  In its response to public comments, the Corps criticized Plaintiffs' comments as follows:

> <u>The comments are very general in nature and contain little specific content regarding the applicant's proposed project</u> referenced in Public Notice 200400967. . . .  <u>Most of these comments are general in nature and do not appear to apply specifically to the referenced project</u>. The use of comments relating to a NWP 21 is not applicable here since Fola has applied for a Section 404 CWA IP. Since an IP requires a much more rigorous agency review, <u>a substantial amount of project specific support information must be provided to the Corps so as to allow a project specific review</u> in accordance with NEPA and 40 CFR 230 review process. The Corps uses this process to evaluate the project specific information and determine whether the project's impacts are significant or not and present their findings. The NEPA guidelines stipulate the Corps carefully consider the probable direct, indirect and cumulative impacts of a proposed activity. Speculative, unsupported or unsubstantiated impacts are not considered probable and, since <u>most of the ACEE comments contain little, if any, information regarding specific impacts associated with the proposed activities, such comments do not fall in the required probable category for consideration by the Corps</u>.

DD, pp. 129-30 (emphasis added).  Thus, Fola's argument—that Plaintiffs' comments were

meaningful—is flatly inconsistent with the rationale used by the Corps in its response to comments—that Plaintiffs' comments could not even be considered because they lacked project-specific information. Of course, the reason Plaintiffs' comments could not be more specific was because the public notice gave them nothing specific to work with. The Corps' public notice therefore violated its regulations.

## II.     The Corps Violated NEPA Public Participation Requirements

The NEPA regulations require the Corps to "involve environmental agencies, applicants, and the public, to the extent practicable, in preparing" environmental assessments. 40 C.F.R. § 1501.4(b). This regulation has been interpreted to mean that "[a]n agency, when preparing an EA, must provide the public with sufficient environmental information, considered in the totality of circumstances, to permit members of the public to weigh in with their views and thus inform the agency decision-making process." Bering Strait Citizens for Responsible Dev. v. U.S. Army Corps of Eng'rs, 524 F.3d 938, 953 (9th Cir. 2008).

The Corps violated NEPA by not circulating Fola's EID and CMP to the public before making its decision. There is no doubt that it was practicable for the Corps to do so, since it circulated both documents to other government agencies. DD, p. 11. The obvious reason why the Corps circulated the EID and CMP was because those documents were necessary to allow other agencies to evaluate Fola's project.

According to the Corps' own guidance document on EIDs, "[t]he goal of [the environmental impacts] section [of the EID] is to provide sufficient information for the Corps to determine if the environmental impacts of the project are in compliance with the Section 404(b)(1) Guidelines or contrary to the public interest." Corps NEPA Guidance Document, Pl.

PI Ex. 10, p. 6.  The guidance document evaluates each of the public interest factors under the Guidelines and identifies numerous gaps where additional information is needed in the EID to comply with NEPA.  Id. at 6-21.  The Corps therefore relies on the applicant's EID to assure NEPA compliance.

Similarly, the CMP was the centerpiece of the Corps' determination of insignificant effects under NEPA.  The Corps' determination of insignificance rested on its repeated statements that "the proposed compensatory mitigation is adequate to off-set impacts to aquatic resources proposed for impact," the "compensatory mitigation, as proposed, is sufficient to offset unavoidable impacts to aquatic resources," and "[t]he losses would be appropriately compensated for via the applicant's revised compensatory mitigation plan and post-mining revegetation plan."  DD, pp. 79, 84, 86, 133.

Fola misstates Plaintiffs' NEPA claim as a demand that the Corps had to circulate its Environmental Assessment for public comment before it was issued.  Fola SJ Mem. 11.  All of the cases Fola cites are limited to that issue.  Id.  Plaintiffs have not raised such a claim.  Instead, their argument is that the Corps must provide sufficient environmental information prior to the release of the EA so that the public can participate meaningfully in the NEPA process.  The Ninth Circuit's decision in Bering Strait directly supports Plaintiffs' argument.

Fola also argues that the Corps' notice contains sufficiently detailed information to meet its NEPA obligations, and that Plaintiffs' extensive comments demonstrate that it understood the mitigation issues.  Fola SJ Mem. 11-12.  However, Plaintiffs' lack of access to over 487 pages of the EID and the CMP during the public comment period violated NEPA requirements and denied Plaintiffs a meaningful opportunity to comment.  Furthermore, by rejecting Plaintiffs' comments

as too general, the Corps' response to those comments demonstrates that its dissemination of information was inadequate and failed to provide a sufficiently specific picture of the action the Corps was proposing to take. The Corps' selective circulation of documents to agencies but not to the public also violates the NEPA regulation which expressly grants "environmental agencies, applicants, and the public" equal rights of access to the environmental assessment process. 40 C.F.R. § 1501.4(b).

As the court stated in Marsh, "if the public is not apprised of the rationale behind a proposed decision, or if the public is informed of the rationale only after the close of the comment and hearing period, then the agency cannot be said to have provided a realistic opportunity for public hearings or meaningful comments." 568 F. Supp. at 993. As the court quoted from U.S. Lines, 584 F.2d at 540:

> Only when the public is adequately informed can there be any exchange of views and any real dialogue as to the final decision. And without such dialogue any notion of real public participation is necessarily an illusion.

568 F. Supp. at 993. The Corps therefore violated the CWA and NEPA by issuing an inadequate public notice and failing to circulate the EID and CMP for public review prior to its decision.

Plaintiffs were forced to prepare their public comments in the dark, raising only general objections in anticipation of what they believed the Corps might do based on past experience. Then the Corps sat back and reviewed a mountain of undisclosed information, relied upon this information as the basis for its resulting permit decision, and only released the information when it issued the permit accompanied by a lengthy decision document. Absent judicial intervention to enforce the law, this makes a mockery of the public participation requirements of the CWA and NEPA. It also resembles trial by ambush, where one side resists all discovery and then unleashes

all of its material on the eve of trial.

The Court is also prejudiced by the Corps' violations. The purpose of having robust public comments and the agency's reasoned response to those comments is to ventilate the issues in the administrative record. "The agency's explanation must simply enable a reviewing court 'to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them the way it did.'" State of S.C. ex rel. Tindal v. Block, 717 F.2d 874, 886 (4th Cir. 1983); see Am. Radio Relay League, 524 F.3d at 236-37 (quoting Sierra Club v. Costle, 657 F.2d 298, 334, 397-98 & n. 484 (D.C. Cir.1981) ("Public notice and comment regarding relied-upon technical analysis, then, are "[t]he safety valves in the use of . . . sophisticated methodology.")). The reviewing court can then determine if the agency's decision was arbitrary and capricious based on that record. Here, the Corps' violations have prevented the development of such a record, and have left it as a one-sided statement of the Corps' position. No public participation has actually occurred because there "was no opportunity for a real dialogue or exchange of views." U.S. Lines, 584 F.2d at 540. The Corps has stacked the deck in its favor by suppressing meaningful public input.

**III.     Plaintiffs' Claim Regarding Selenium Impacts Is Not a Public Notice Claim**

Fola's characterizes Plaintiffs' claim concerning selenium impacts as a public notice issue. Fola SJ Mem. 12-13. However, as Plaintiffs explained in their preliminary injunction briefs, that issue relates to Plaintiffs' claim that the Corps inadequately considered cumulative impacts. Pl. PI Mem. 17-18, Document #37; Pl. PI Reply Mem. 18-21, Document #56. Fola specifically excluded non-public-notice claims from its motion for partial summary judgment. Fola SJ Mem. 2. The selenium issue is therefore not within the scope of Plaintiffs' public notice

14

claims or Fola's current motion, and it is premature to reach this issue.

## Conclusion

For these reasons, Plaintiffs respectfully request that this Court deny Fola's motion for partial summary judgment, grant Plaintiffs' cross-motion for partial summary judgment, issue a permanent injunction against the Corps ordering it to vacate the § 404 permit for the Fola Ike Fork No. 1 and Ike Fork No. 2 Surface Mines, and remand that permit to the Corps to correct its violations.

Respectfully submitted,

/s/ Joseph M. Lovett
JOSEPH M. LOVETT
DEREK O. TEANEY
Appalachian Center for the
    Economy and the Environment
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalachian-center.org

JAMES M. HECKER
Public Justice
1825 K Street, N.W. Suite 200
Washington, D.C. 20006
(202) 797-8600
jhecker@publicjustice.net

Counsel for the Plaintiffs

**CERTIFICATE OF SERVICE**

I, Joseph M. Lovett, hereby certify that on April 15, 2009, I electronically filed the foregoing Plaintiffs' Memorandum in Opposition to Fola's Motion for Partial Summary Judgment and in Support of Their Cross-Motion For Partial Summary Judgment on Count One of Their Fourth Amended and Supplemental Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Cynthia J. Morris
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986

Ann D. Navaro
U. S. Army Corps Of Engineers
Great Lakes and Ohio River Division
P. O. Box 1159
Cincinnati, OH 45201

Robert McLusky
Jackson Kelly PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, WV 25322

James Crockett
Allyn Turner
Spilman, Thomas & Battle, PLLC
Post Office Box 273
Charleston, WV 25321-0273

Terry Sammons
Sammons Law Offices, PLLC
P.O. Box 1747
Gilbert, West Virginia 25621

Edward P. Tiffey, PLLC
Post Office Box 3785
Charleston, West Virginia 25337-3785

W. Howard Sammons, II
Law Office of W. Howard Sammons II, PLLC
2768 Pennsylvania Avenue
Charleston, West Virginia 25302

Nicholas S. Preservati
Preservati Law Offices, PLLC
P. O. Box 1431
Charleston, West Virginia 25325

                                              /s/ Joseph M. Lovett
                                              JOSEPH M. LOVETT